# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| YVETTE WINIA, RAUL RIVERA, CRISTINA RIVERA, AND KAMRAN KHAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>TOYOTA MOTOR CORPORATION; TOYOTA MOTOR SALES, U.S.A., INC.; TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.; AND DOES 1-50, inclusive | Civil Action:_4:20cv240_____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

The allegations contained in this Complaint are based on Plaintiffs' personal knowledge as to Plaintiffs' own conduct and on information and belief as to all other matters based on an investigation by Plaintiffs' Counsel[1]:

## I.    INTRODUCTION

1.    Plaintiffs, Yvette Winia, Raul Rivera, Cristina Rivera, and Kamran Khan (collectively "Plaintiffs") bring this class action against Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc. ("TMS") and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively "Toyota" or "Defendants") for manufacturing and selling dangerously defective vehicles and concealing and/or intentionally failing to disclose the defect to Plaintiffs and the public and refusing to properly remedy the significant safety hazard

---

[1] Counsel's investigation includes analysis of publicly available information, including consumer complaints to the National Highway Transportation Safety Administration, Bulletins issued by Defendants, and additional analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

present in Plaintiffs' vehicles.

2.      Plaintiffs bring their claims individually and on behalf of all persons or entities in the United States who own(ed) or lease(d) a 2010-2015 Prius or Prius PHV, 2012-2015 Prius V, 2012-2014 Camry Hybrid, or 2013-2015 Avalon Hybrid vehicle (the "Class Vehicles") not subject to a prior recall for the brake booster pump assemblies.

3.      The Class Vehicles contain a significant defect in their braking systems and pose an immediate and significant safety hazard to vehicle operators and the public. Specifically, the Defect is associated with defective brake booster pump assemblies in the Class Vehicles which cause the braking systems to fail ("the Defect").  The Defect is dangerous and life threatening and adversely affects Plaintiffs' use, enjoyment, safety, and value of the Class Vehicles.

4.      Toyota concealed and/or knowingly failed to disclose information regarding the Defect from the public for several years, despite knowing about it and its potential to cause serious injury or death, in order to protect Toyota from suffering an economic loss.  Put another way, Toyota decided to protect its own profits rather than protect the consumers who had purchased its vehicles with a dangerous defect.

5.      The Defect was recently brought to light by Roger Hogan, the owner and president of two Toyota dealerships located in Southern California.  Mr. Hogan petitioned the National Highway Traffic Safety Administration ("NHTSA") to open an investigation into the Defect, stating in that petition that the Defect is "causing crashes that are injuring people—and Toyota is mishandling it."

6.      The Defect does not only constitute a safety issue in the Class Vehicles, but it negatively impacts the intrinsic value of the Class Vehicles themselves.  Indeed, Plaintiffs and Class members would not have purchased or leased their vehicles had Toyota disclosed the Defect or would have paid substantially less for those vehicles.

7.     As a direct result of Defendants' wrongful conduct, Plaintiffs and Class members have been harmed and have suffered actual damages and an ascertainable loss of money and/or property and/or loss in value.

8.     Plaintiffs bring this action to redress Toyota's violations of state consumer protection statutes, Toyota's breaches of implied and express warranties, Toyota's breach of its duty of good faith and fair dealing, as well as Toyota's fraudulent omissions and concealment of the Defect.

## II.     JURISDICTION AND VENUE

9.     This Court has original diversity jurisdiction, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because Plaintiffs and many members of the Class are citizens of states different from Defendants' home states, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class and Classes.

10.     This Court has specific personal jurisdiction over Toyota because defendants Toyota Motor Sales USA, Inc. and Toyota Engineering & Manufacturing North America, Inc. have maintained their headquarters in this judicial district since 2014.   Thus, Defendants have purposefully availed themselves of the benefits and protections of this jurisdiction by continuously and systematically conducting substantial business in and from this judicial district, directing advertising and marketing activities from within this district, and intentionally and purposefully placing Class Vehicles into the stream of commerce within Texas and throughout the United States.   Thousands of class vehicles have been sold within Texas and many within this judicial district.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Toyota

transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this District.  Toyota has authorized dealers in this district, has advertised in this district and has received substantial profits from its sales and leases of vehicles in this district.  Therefore, a substantial and material part of the events giving rise to these claims occurred in this district.

**III.     PARTIES**

     **A.     <u>Plaintiffs</u>**

12.     Plaintiff Kamran Khan ("Khan") is a resident of Little Rock, Arkansas.  In May 2019, Mr. Khan purchased a used 2010 Toyota Prius from an individual in Greenbrier, Arkansas. Shortly after purchasing the vehicle, Mr. Khan noticed that the brakes failed to respond to normal foot pressure, requiring Mr. Khan to apply the brake almost all the way to the floor to get the vehicle to stop.

13.     Plaintiffs Raul Rivera and Cristina Rivera ("Riveras") are residents of Huntley, Illinois.  In February 2014, the Riveras purchased a used 2010 Toyota Prius from Arlington Toyota in Palatine, Illinois.  The vehicle is driven only by Mr. Raul Rivera.  Shortly after purchasing the vehicle, Mr. Rivera noticed that every time he applied the brake and hit a bump in the road, the brake pedal drops to zero pressure causing the vehicle to spring forward.  This causes Mr. Rivera to aggressively push down on the brake pedal to avoid slamming into vehicles in front of him.  The Riveras informed the Pauly Toyota dealership in Crystal Lake, Illinois of the brake issue, and the dealership attributed the problem to the floor mats and removed them.  The issue continues without the floor mats.

14.     Plaintiff Yvette Winia ("Winia") is a resident of Indialantic, Florida.  In November 2019, Ms. Winia purchased a used 2012 Prius V from Eau Gallie Auto Sales in Indian Harbour Beach, Florida.  On January 13, 2020, while driving Ms. Winia's Prius V, Thomas Johnson, Ms.

Winia's husband, drove over a pot-hole and when he pressed his foot on the brake pedal, his brakes failed, causing his vehicle to strike another vehicle resulting in damage to both vehicles.

### B.   **Defendants**

15.   Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation with its principal place of business located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571, Japan. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc.  TMC, through its various entities, designs, manufactures, markets, distributes, and sells Toyota, Lexus and Scion automobiles in California and multiple other locations in the United States and worldwide.

16.   Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated in California and has been headquartered in Plano, Texas since 2014.  TMS is Toyota's U.S. sales and marketing arm, which oversees sales and other operations in 49 states. TMS distributes Toyota and Lexus vehicles and sells these vehicles through its network of dealers. Money received from the purchase of a Toyota vehicle from a dealer flows from the dealer to TMS. Money received by the dealer from a purchaser can be traced to TMS and TMC.

17.   At all times herein mentioned, Toyota designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, leased and/or sold Toyota vehicles, including the subject vehicles operated by Plaintiffs.

18.   TMS and TMC sell or lease Toyota vehicles through a network of dealers who are the agents of TMS and TMC.

19.   Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other

Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendant.

20.    Defendant Toyota Engineering & Manufacturing North America, Inc. ("TEMA") is a Kentucky corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024.

21.    TEMA is responsible for automobile engineering, manufacturing, research, and design in North America for Toyota motor vehicles. TEMA designs, develops, tests, manufactures, assembles, and evaluates Toyota motor vehicles in the United States. TEMA also develops parts for North American Toyota vehicles. TEMA operates factories which manufacture Toyota vehicles and operates research and development facilities.

22.    The true names and capacities of the Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who sue such Defendants by such fictitious names. Each Defendant designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of any Defendants designated herein as DOES when such identities become knows.

23.    Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were make known to, and ratified by, each other defendant.

IV.    **FACTUAL ALLEGATIONS**

A.    **The Defect Has Been Manifesting In Toyota Hybrid Vehicles for Years**

24.    The Class Vehicles suffer from a significant brake defect that leads to the underperformance and/or the total failure of the braking systems.  Because the Defect impacts the braking systems of the Class Vehicles, it threatens the health and safety of every owner or lessor of a Class Vehicle as well as the public at large.

25.    Specifically, the Defect impacts the brake booster pump assemblies in the Class Vehicles.  Plaintiffs and numerous Class Vehicle owners have reported the Defect to both Toyota as well as NHTSA, informing them that the Defect renders their brakes inoperative under normal driving conditions.  In fact, NHTSA has received more than 1,000 complaints regarding the Class Vehicles, including many complaints about brake malfunction that resulted in vehicle accidents and injury to vehicle occupants.

26.    As early as May 2010-October 2011, Toyota investigated a potential problem with the brake booster pump assembly.  During that investigation Toyota found that a "variation in the amount of clearance between the metal housing and the bellows" in the pump assembly could mean that "large impact forces may be exerted onto the metal bellows, which could result in gradual damage to the bellows."

27.    Eventually, a very limited recall – confined only to certain 2010 Prius vehicles and Lexus HS250h vehicles – was undertaken to correct this issue.  This recall, notably, did not include any of the Class Vehicles.

28.    Later, in June 2013, Toyota undertook a "voluntary safety recall" to address an issue with the brake booster pump assembly.  Toyota sent a Defect Information Report to NHTSA, describing the problem as one caused by "brake pressure accumulators consisting of a metal plunger containing brake fluid encased in a metal housing," and further elaborating that the

"plunger is designed with metal pleated bellows to allow for motion," and that "nitrogen gas is sealed between the plunger and the housing." The concern that led to this voluntary action was the "possibility that a fatigue crack could develop in the bellows due to the vertical vibration of the plunger while driving," and that "nitrogen gas could lead into the brake fluid and gradually cause the brake pedal stroke to become longer, resulting in decreased hydraulic pressure," and "could affect stopping distance and increase the risk of a crash."

29.     In July 2019, Toyota commenced another safety recall for certain Lexus vehicles with brake problems. In its statements to NHTSA, Toyota explained that a certain number of Lexus vehicles "had a brake booster pump containing a plastic brush holder produced with an improper shape." As a result of that defect, there was a "possibility that the plastic brush holder may have become stuck in the brush holder." Should that occur, Toyota explained that "the brush would be unable to maintain an electrical connection within the motor and may cause the pump motor to stop operating" and a "sudden and complete loss of braking assist," increasing stopping distance and, ultimately, the risk of a crash. Despite the fact that this defect was nowhere as serious as the one at issue in this lawsuit, Toyota deemed this risk sufficient to engage in a prophylactic safety recall of these vehicles so as to avoid any such potential tragedy.

30.     On July 24, 2019, Toyota initiated a "non-compliance" recall stating that "there is a possibility that the brake booster pump…may stop operating" which could cause the "brake assist to be lost completely" and the Vehicle Stability Control (ESC) to be completely deactivated or rendered useless.  This recall only included a small portion of Toyota hybrid vehicles that were equipped with brake booster pumps manufactured by Advics Co. Limited Ltd.  The Class Vehicles are experiencing the same dangerous condition as the vehicles included in this woefully inadequate recall.

31.     On September 24, 2019, Toyota issued a Technical Service Bulletin ("TSB") for

2012-2014 Camry Hybrids and 2013-2015 Avalon Hybrids. That TSB acknowledged that these vehicles were experiencing the same issues with the brake booster pumps as other hybrid vehicles manufactured by Toyota. In that TSB, Toyota indicated that the "condition may be caused by a small internal brake fluid lead in the brake booster assembly with master cylinder."

32. Additionally, on September 11, 2019, Toyota initiated a warranty enhancement program directed, again at 2012-2014 Camry Hybrids and 2013-2015 Avalon Hybrids. That program noted that "reports have indicated certain internal malfunctions of the brake booster assembly" in those vehicles.

### B. Roger Hogan Informs NHTSA of The Defect

33. On September 19, 2019 Roger Hogan, one of Toyota's dealers in California, sent a letter to NHTSA entitled "Petition for Defect Investigation – Toyota Hybrid Brake Failures Causing Crashes and Injury" ("Hogan Letter").

34. The Hogan Letter stemmed, in part, from Mr. Hogan's first-hand experience with the repair of a 2013 Prius that was involved in a crash that injured three teenagers. The driver of the car maintained that during the crash the brakes had failed on the car leading directly to the crash.

35. As a Toyota dealer, Mr. Hogan had become aware of brake system problems with the 2010-15 Prius Liftback, the 2012-15 Prius Plug In, the 2012-14 Camry Hybrid, and the 2013-15 Avalon Hybrid.

36. In the Hogan Letter, Mr. Hogan bluntly informed NHTSA of a defect in "brake booster pump assemblies with the master cylinder" and directly accused Toyota of "mishandling" the problem.

37. The brake booster pump assembly must function properly for a vehicle equipped with one to stop itself. While Toyota has addressed the failure of this vital part on certain vehicles,

it has stopped well short of publicly acknowledging and rectifying this dangerous condition in the Class Vehicles.  As noted in the Hogan Letter, "Toyota has put innocent lives at risk by knowingly excluding hundreds of thousands of hybrids with defective brakes from past safety recall populations."

38.    In addition, Mr. Hogan, familiar with Toyota procedures and policies, informed NHTSA that certain codes for part failures that were part of previous recalls and warranty extensions are identical to those indicated when the Defect manifests itself in the Class Vehicles. In particular, diagnostic trouble code (DTC) C1256 which is triggered when there is a "significant drop in accumulator pressure" is being stored at an extraordinarily high rate in the Class Vehicles. Toyota knows that the Defect implicates basic safety features of the Class Vehicles but refuses to take any action until *after* a failure occurs, in contravention of its duty as a car manufacturer to preemptively remedy known safety defects.

### C.    Toyota Knew of the Defect

39.    A vital source of information regarding automobile defects, both for the consuming public and manufacturers, is NHTSA's Consumer Complaint Database.  The database stores complaints submitted to NHTSA since 2000 regarding virtually every make and model of vehicle sold in the United States.  That database contains hundreds of complaints regarding the braking systems of 2011-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2015 Camry Hybrid, and 2013-2015 Avalon Hybrid vehicles.

40.    The following representative complaints were submitted to NHTSA regarding the Defect in the Class Vehicles:[2]

---

[2] The following are reproduced verbatim and any typographical or syntax errors occur in the original and are reproduced without correction.

<u>October 30, 2019</u> **NHTSA ID NUMBER: 11277196**
## **Components: SERVICE BRAKES**
**NHTSA ID Number:** 11277196

**Incident Date** October 30, 2019

**Consumer Location** MICHIGAN CITY, IN

**Vehicle Identification Number** JTDKN3DU0A0****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

MY 2010 TOYOTA PRIUS SLIDES WHILE BREAKING WHEN I DRIVE OVER A BUMP OR A WHOLE THE CAR SLIDES WHILE IN MOTION ON CITY STREETS OR HIGHWAYS. THESE OCCURRENCES HAPPEN WHILE DRIVING STRAIGHT OR TURNING. THIS OCCURS ALL THE TIME WHEN THE ROADS ARE DRY AND IT IS WORST WHEN IT IS WET OUTSIDE, ICE, RAIN SLEET OR SNOW.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TOYOTA | PRIUS | 2010 |

<u>October 9, 2019</u> **NHTSA ID NUMBER: 11267321**
## **Components: SERVICE BRAKES**
**NHTSA ID Number:** 11267321

**Incident Date** October 8, 2019

**Consumer Location** SAN FRANCISCO, CA

**Vehicle Identification Number** JTDKN3DU3B1****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES1**

**DEATHS0**

AFTER APPLYING BRAKES CAR CONTINUED TO MOVE FORWARD THROUGH GARAGE OPENING CRASHING INTO WALL AT END OF GARAGE BEFORE IT STOPPED. BRAKE WAS NOT SLOWING/STOPPING VEHICLE

## 1 Affected Product
## Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2011 |

## June 18, 2018 NHTSA ID NUMBER: 11102264
## Components: SERVICE BRAKES

**NHTSA ID Number:** 11102264

**Incident Date** June 16, 2018

**Consumer Location** WILMINGTON, NC

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASHYes**

**FIRENo**

**INJURIES0**

**DEATHS0**

WHILE PULLING INTO A PARKING SPACE (SPEED LESS THAN 5 MPH) AND APPLYING THE BRAKES THE PEDAL WENT TO THE FLOOR AND THE CAR SEEMED TO SPEED UP. THE CAR JUMPED THE CURB AND STRUCK A TREE. A GOOD SAMARITAN ASSISTED AND ACTUALLY GOT IN THE CAR AND FOUND THE BRAKE PEDAL WENT TO THE FLOOR. SHORTLY AFTER THE ACCIDENT THE BRAKES RETURNED TO NORMAL OPERATION. THIS IS THE SECOND TIME THAT THE CAR HAS EXPERIENCED SIMILAR PROBLEMS. IN 2014 WHILE PULLING INTO THE DRIVEWAY THE BRAKE PEDAL WENT TO THE FLOOR AND STRUCK THE HOUSE. SHORTLY AFTER THE BRAKES RETURNED TO NORMAL OPERATIONS. TOYOTA WAS NOTIFIED AND INSPECTED THE CAR'S COMPUTER AND BRAKING SYSTEM PER CASE NUMBER 1410012557. AFTER THE INSPECTION TOYOTA SAID THAT THERE WERE NO BRAKE ISSUES FOUND WITH THE CAR AND STATED THAT IT WAS SAFE TO DRIVE. OBVIOUSLY THERE IS AN ISSUE WITH THE BRAKING SYSTEM IN THESE CARS.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

**August 12, 2019** NHTSA ID NUMBER: 11243249
## Components: SERVICE BRAKES, VEHICLE SPEED CONTROL
**NHTSA ID Number:** 11243249

**Incident Date** August 7, 2019

**Consumer Location** ENNIS, TX

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**1

**DEATHS**0
TL* THE CONTACT OWNED A 2013 TOYOTA PRIUS. THE CONTACT STATED
THAT WHILE DRIVING APPROXIMATELY 10 MPH, THE DRIVER PRESSED THE
BRAKE PEDAL TO STOP THE VEHICLE BUT THE VEHICLE ACCELERATED
FORWARD AND CRASHED INTO A SECOND VEHICLE. DURING THE CRASH THE
DRIVER SUSTAINED MULTIPLE CONTUSIONS TO THE BODY INCLUDING THE
CHEST AREA WHICH REQUIRED MEDICAL TREATMENT. THE VEHICLE WAS
DESTROYED AND TOWED AWAY. A POLICE REPORT #159681-2019 WAS TAKEN
AT THE SCENE. THE LOCAL DEALER TOYOTA OF RICHARDSON (1221 N.
CENTRAL EXPY. RICHARDSON TX.) THE MANUFACTURER WAS NOT NOTIFIED
OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS
120,000.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2013 |

## November 13, 2018 NHTSA ID NUMBER: 11151142
## Components: SERVICE BRAKES, ELECTRONIC STABILITY CONTROL, ELECTRICAL SYSTEM

**NHTSA ID Number:** 11151142

**Incident Date** November 12, 2018

**Consumer Location** NORTH CHARLESTON, SC

**Vehicle Identification Number** JTDKN3DU0E1****

**Summary of Complaint**

**CRASH** Yes

**FIRE** No

**INJURIES** 0

**DEATHS** 0

THE CAR BRAKES FAILED AT LOW SPEEDS (10-15 MPH) AND BUMPED INTO THE CAR IN FRONT IN A STOP-AND-GO TRAFFIC ON THE WET FREEWAY AFTER A RECENT RAIN. THE BRAKE PEDAL WENT ALL THE WAY DOWN TO TOUCH THE FLOOR, AS IF THE BRAKE PEDAL WAS DISENGAGED FROM THE BRAKING SYSTEM AND THE ABS LIGHT DID NOT TURN ON AT THE TIME OF BRAKING. THE CAR WAS DRIVING IN THE STRAIGHT LINE AND IMMEDIATELY BEFORE THIS I WAS ABLE TO SUCCESSFULLY BRAKE THE CAR ON THE VERY SAME TRIP. SO THE PROBLEM IS INTERMITTENT. THIS IS THE SECOND TIME WITH THIS CAR, AS MY SPOUSE ALSO EXPERIENCED THE SIMILAR BRAKE FAILURE AT EVEN LOWER SPEEDS (<10 MPH) RESULTING IN TOUCHING THE CAR IN FRONT AND MINOR SCRATCH ON THE BUMPER. IT WAS A DRY DAY THEN AND ALMOST SIMILAR CIRCUMSTANCES. ASSOCIATED GEICO CLAIM NUMBER IS 0423477190101054. WE OPENED A CASE WITH TOYOTA TO CHECK THE DATA RECORDER. ASSOCIATED TOYOTA CASE NUMBER IS 181112370.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2014 |

## November 19, 2015 NHTSA ID NUMBER: 10794873
## Components: SERVICE BRAKES

**NHTSA ID Number:** 10794873

**Incident Date** October 16, 2015

**Consumer Location** COVINGTON, LA

**Vehicle Identification Number** JTDKN3DU1F0****

### Summary of Complaint

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

I HAVE NOTICED THAT THE BRAKES SOMETIMES DO NOT APPEAR TO WORK PROPERLY, AND ONCE I WAS INVOLVED IN AN ACCIDENT DUE TO THE POOR BRAKING PERFORMANCE. ONCE I QUICKLY TRANSITIONED FROM THROTTLE TO FULL BRAKING AND THE CAR DIDN'T SEEM LIKE IT WAS APPLYING FULL BRAKING. IT DIDN'T SEEM TO DECELERATE LIKE IT SHOULD HAVE. I REAR ENDED A VEHICLE BECAUSE OF THE BRAKING PERFORMANCE. ANOTHER TIME I HAD TO SLAM ON THE BRAKES COMING OFF AN INTERSTATE AND THE BRAKES ALSO DIDN'T SEEM POWERFUL ENOUGH. IT'S AS IF THE BRAKES DON'T FULLY "CATCH" UNTIL THE LAST MINUTE. BOTH TIMES WEATHER CONDITIONS WERE DRY.

### 1 Affected Product
### Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS | 2015 |

## April 27, 2018 NHTSA ID NUMBER: 11090508

## Components: SERVICE BRAKES, AIR BAGS
**NHTSA ID Number:** 11090508

**Incident Date** April 26, 2018

**Consumer Location** Unknown

**Vehicle Identification Number** 4T1BD1FK5CU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**1

**DEATHS**0

TL* THE CONTACT OWNS A 2012 TOYOTA CAMRY HYBRID. WHILE DRIVING 20 MPH, THE BRAKES MALFUNCTIONED. THE CONTACT ATTEMPTED TO MAKE A SUDDEN STOP BY DEPRESSING THE BRAKE PEDAL, BUT THE VEHICLE WOULD NOT STOP. AS A RESULT, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS NOT FILED. THE CONTACT SPRAINED HER RIGHT ANKLE FROM THE PRESSURE OF DEPRESSING THE BRAKE PEDAL CONTINUALLY. MEDICAL ATTENTION WAS REQUIRED. THE VEHICLE WAS TOWED TO NORTH HOLLYWOOD TOYOTA IN NORTH HOLLYWOOD, CALIFORNIA TO HAVE THE DAMAGES ASSESSED. IT HAD NOT BEEN DETERMINED YET WHETHER OR NOT THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED AND PROVIDED THE CONTACT WITH CLAIM NUMBER: 180-427-0700. THE FAILURE MILEAGE WAS APPROXIMATELY 65,000.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2012 |

## November 26, 2015 NHTSA ID NUMBER: 10807100
## Components: SERVICE BRAKES
**NHTSA ID Number:** 10807100

**Incident Date** February 12, 2015

**Consumer Location** SHERWOOD, OR

**Vehicle Identification Number** 4T1BD1FK1DU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

I WAS ENTERING FREEWAY ON RAMP. HEAVY TRAFFIC. BEAUTIFUL DAY, DRY ROADS. VEHICLE IN FRONT OF ME MADE BRAKED SUDDENLY. I QUICKLY APPLIED MY BRAKES. MY BRAKES DID NOT ENGAGE. I WAS APPROXIMATELY 2-3 CAR LENGTHS BEHIND VEHICLE IN FRONT OF ME AND TRAVELING 25 MPH.

WHEN I APPLIED BRAKES, MY CAR DID NOT EVEN TRY TO STOP, IT BASICALLY SLID 2 1/2 CAR LENGTHS INTO REAR OF VEHICLE. MY VEHICLE ONLY STOPPED MOVING BECAUSE IT WAS STOPPED BY VEHICLE IN FRONT.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| TOYOTA | CAMRY HYBRID | 2013 |

## July 11, 2016 NHTSA ID NUMBER: 10883971
## Components: SERVICE BRAKES
**NHTSA ID Number:** 10883971

**Incident Date** May 21, 2016

**Consumer Location** ATLANTA, GA

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**1

**DEATHS**0

TL* THE CONTACT OWNS A 2014 TOYOTA CAMRY HYBRID. WHILE DRIVING VARIOUS SPEEDS AND DEPRESSING THE BRAKE PEDAL ATTEMPTING TO STOP, THE CONTACT'S VEHICLE WOULD NOT STOP AND REAR ENDED ANOTHER DRIVER. THE CONTACT SUFFERED MINOR INJURIES TO THE NECK THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE AIR

BAGS FAILED TO DEPLOY. THE VEHICLE WAS TOWED TO A COLLISION SHOP WHERE THE CONTACT WAS INFORMED THAT THE BRAKES WERE NOT FUNCTIONING. THE VEHICLE WAS THEN TAKEN TO A DEALER WHERE IT WAS CONFIRMED THAT THE HYDRAULIC BRAKING SYSTEM FAILED AND WOULD NEED TO BE REPAIRED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 20,000. THE VIN WAS NOT AVAILABLE.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY HYBRID | 2014 |

August 2, 2017 **NHTSA ID NUMBER: 11012247**
**Components: SERVICE BRAKES**
**NHTSA ID Number:** 11012247

**Incident Date** August 1, 2017

**Consumer Location** WASHINGTON, DC

**Vehicle Identification Number** 4T1BF1FK8FU****

**Summary of Complaint**

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

TL* THE CONTACT OWNS A 2015 TOYOTA CAMRY. WHILE THE VEHICLE WAS APPROACHING A STOP AT AN INTERSECTION, THE BRAKES FAILED. THE CONTACT DEPRESSED THE BRAKE PEDAL EXCESSIVELY, BUT THE VEHICLE WOULD NOT STOP. AS A RESULT, THE CONTACT WAS INVOLVED IN A SIDE IMPACT COLLISION. A POLICE REPORT WAS NOT FILED AND THERE WERE NO INJURIES. THE DEALER AND MANUFACTURER WERE NOT CONTACTED. THE VEHICLE WAS OPERABLE AFTER THE VEHICLE WAS DEPOWERED AND RESTARTED. THE APPROXIMATE FAILURE MILEAGE WAS 42,999.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | CAMRY | 2015 |

**December 23, 2019** NHTSA ID NUMBER: 11290892

## Components: AIR BAGS, SERVICE BRAKES, UNKNOWN OR OTHER

**NHTSA ID Number:** 11290892

**Incident Date** November 29, 2019

**Consumer Location** PENSACOLA, FL

**Vehicle Identification Number** 4T1BK13BXFU****

**Summary of Complaint**

CRASHYes

FIRENo

INJURIES1

DEATHS0

I WAS HEADING DOWN SNOW GEESE SOUTH IN DUCK N.C. TO TURN LEFT ONTO WOOD DUCK DRIVE. AS I APPROACHED THE TURN, MY BRAKES FAILED AND I WENT INTO THE PARKING AREA OF 1324 DUCK ROAD. I COULD HIT A PARKED TRUCK OR HOUSE. I HIT THE TRUCK. THE AIRBAGS DIDNT DEPLOY. NONE OF THEM. IT WAS A HEAD ON COLLISION. MY CAR WAS TOTALED. THE POLICE SHOWED UP AND WERE SUPRISED THAT THERE WERE NO AIRBAGS. THIS CONCERNS ME GREATLY. THE BRAKES FAILING WAS SCARY ENOUGH, BUT ABSOLUTELY NO AIRBAGS! *DSY

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | AVALON | 2015 |

**September 17, 2019** NHTSA ID NUMBER: 11256270

## Components: SERVICE BRAKES, VEHICLE SPEED CONTROL

**NHTSA ID Number:** 11256270

**Incident Date** July 26, 2019

**Consumer Location** SAN BERNARDINO, CA

**Vehicle Identification Number** 4T1BK1EB8DU****

### Summary of Complaint

**CRASH**Yes

**FIRE**No

**INJURIES**0

**DEATHS**0

MY VEHICLE WHILE HOLDING THE BRAKE (STATIONARY) AT A STOP SIGH, THE VEHICLE ACCELERATED AND HIT THE BACK OF THE CAR IN FRONT.. FOR 5 DAYS IT WORKED AND THE FOLLOWING WEDNESDAY IT ACCELERATED AGAIN ( IN MOTION) WHILE PARKING IN THE HANDICAP SPACE AT IDLE SPEED AND BRAKES. TOYOTA MOTOR NORTH AMERICA, INC. SENT ME A LETTER THAT STATED THAT THEY COULD NOT FIND ANY PROBLEM WITH THE VEHICLE. THEIR INSPECTOR CALLED ME AND TOLD ME THE CAR WORKED GREAT AND THE MASTER WARNING SIGNAL WAS NOT FLASHING NOR BUZZING AND HE WOULD SEND ME A COPY OF THE COMPUTER PRINT OUT BUT IT WAS NEVER SENT. I DID GET SOME KIND OF A RECORD BUT IT COULD NOT BE COPIED, I TOOK A PICTURE OF IT BUT IT IS IN SOME TYPE CODE( A COMPUTER FILE) THE TEST CONSISTED OF A ACCELERATION AND STOPPING TEST 22 DAYS AFTER THE 1ST INCIDENT, THE CAR WORKED WELL FOR THE DAYS BETWEEN THE INCIDENTS. THE MASTER WARNING SIGNAL WAS FLASHING AND BUZZING, INSTRUCTIONS WAS TO STOP THE CAR AND HAVE IT TOWED TO A DEALER THEY DESCRIBED ONE INCIDENT , I DON'T KNOW WHICH INCIDENT THEY CHECKED FOR THERE WERE TWO INCIDENTS 5 DAYS APART. THE REPORT IS A SHAM I CAN SEND YOU A COPY OF THEIR LETTER. TEXT A COPY OF THIS COMPUTER INFO OR FORWARD THE E-MAIL WITH THE COMPUTER INFO THAT I COULD NOT COPY WITH MY COPIER. I DON'T UNDERSTAND ANY OF THE COMPUTER INFO..

*JS

### 1 Affected Product
### Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | AVALON | 2013 |

May 2, 2017 **NHTSA ID NUMBER: 10983184**
## Components: SERVICE BRAKES
**NHTSA ID Number:** 10983184

**Incident Date** May 1, 2017

**Consumer Location** ATLANTA, GA

**Vehicle Identification Number** JTDZN3EU2C3****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WHEN DRIVING ON UNEVEN GROUND, LIKE POT HOLES, THE BRAKES FAIL. LITERALLY IF YOU HAVE YOUR FOOT ON BRAKE WHEN DRIVING OVER A POT HOLE, YOU CAN FEEL THE BRAKES RELEASE AND THE CAR WON'T STOP. I'VE HAD SIMILAR ISSUES ON BUMPY GROUND. THE CAR HAS ALWAYS HAD THE PROBLEM SINCE I PURCHASED IT, PROBABLY ON A WEEKLY BASIS, AND I'VE WONDERED ABOUT THE SAFETY AND WHETHER IT'S JUST RELATED TO ABS. I'VE ALSO INQUIRED AT THE DEALERSHIP. LUCKILY, I'VE NEVER BEEN IN AN ACCIDENT BECAUSE OF THE PROBLEM. BUT, THIS WEEKEND MY FRIEND WITH A PRIUS HAD AN ACCIDENT BECAUSE OF THE PROBLEM, SO I DECIDED TO REPORT MY COMPLAINT.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | PRIUS V | 2012 |

41.    Toyota has known of the Defect for years.  Toyota has access to and routinely monitors records of its customers' complaints, dealership repair records, complaints submitted to NHTSA, warranty and post-warranty claims.  In addition, Toyota had knowledge of similar or identical warranty or recall issues it had identified in Toyota vehicles utilizing identical brake technology.

42.     Additionally, Toyota routinely monitors the internet for complaints regarding its vehicles and its customer service department routinely monitors the internet for consumer complaints.  Through these sources, Toyota either knew or should be presumed to have known about the hundreds of complains on the NHTSA website as well as the potential danger that the Defect posed to its customers.

43.     Toyota's warranty department also closely monitors and analyzes warranty data submitted by its dealerships and authorized repair locations to identify defect trends in its vehicles. When a repair is made to a Toyota vehicle, Toyota requires that these locations notify Toyota of the repair with detailed documentation.

44.     As detailed by Mr. Hogan, "Toyota gets real-time transmissions of DTCs and freeze frame data from hybrids with failed brakes through the Techstream tool at its franchise dealerships."  Which is to say, Toyota is well aware of the Defect through multiple channels of direct and indirect communication.

**D.    Toyota Avoids Honoring Its Warranty**

45.     The Class Vehicles are sold with a "Limited New Vehicle Warranty" which obligates Toyota to repair any defects in the first three years or 36,000 miles (whichever occurs earlier) of a new vehicle's life.

46.     Many owners and lessees of Class Vehicles have presented their vehicles to a Toyota dealership for repairs related to the Defect for warranty repairs, but Toyota has avoided its obligations under the warranty by either failing to tell Class members about the defect in the Class Vehicles or refusing the necessary repair until the Class Vehicle in question indicated a DTC related to the Defect.

47.     Specifically, Toyota has attempted to mitigate the serious safety hazard caused by the Defect if, and only if, the Class Vehicle in question had already demonstrated failure of the

braking system by indicating one of four separate DTCs prior to presenting for warranty repair at a Toyota dealership.  Under the program in question, called Customer Support Program ZJB, a 2010-2015 Prius or Prius HPV vehicle could have the entire brake booster pump assembly replaced free of charge, regardless of vehicle age or mileage, through November 19, 2019 (for 2010 Prius and Prius HPV vehicles) or through August 31, 2021 (for 2011-2015 Prius and 2012-2015 Prius HPV vehicles), or, for 10 years or 150,000 miles, whichever occurs first.  But, these repairs are only available for Class Vehicles that have experienced total braking failure related to Defect.

48.    The part numbers used in the warranty repairs related to Customer Support Program ZJB are new and different part numbers than the parts being replaced—demonstrating Toyota's knowledge that the original parts in the Class Vehicles are defective.  Nevertheless, customers who present their vehicles to Toyota dealerships without the required DTC codes are told by Toyota that no warranty repair is available until and unless they experience a malfunction of the braking system caused by the Defect.

49.    Approximately one year after initiating Customer Support Program ZJB, Toyota initiated a similar program for owners of 2012-2014 Camry Hybrid and 2013-2015 Avalon Hybrid vehicles.  Like the warranty program for Prius owners, an owner of a Camry or Avalon Class Vehicle must have experienced a total failure of the braking system caused by the Defect before that vehicle is eligible for warranty repair under that program.

50.    More incredibly, given the severe hazard presented by the defect, Toyota charges Class Vehicle owners for a diagnostic test if their vehicle is presented to a dealership for warranty coverage under the above-referenced programs and the vehicle does not indicate one of the DTCs that would indicate the need for a warranty repair.  Toyota warned consumers in the letter announcing the warranty programs as follows: "Please be aware that, if the condition is not covered by this Customer Support Program, you may be responsible for the initial diagnostic fees and any

other repairs that you may decide to have performed.  Any authorized Toyota Dealership can determine if a condition is covered by this Customer Support Program."

51.    To ensure the least amount of money spent on covering these necessary repairs, Toyota also forbade its dealers from informing customers about the warranty program, telling them "Direct marketing of this Customer Support Program is strictly prohibited pursuant to [] Toyota Warranty Policy."

52.    Thus, of the more than one million vehicles with the Defect, Toyota will only replace those that present having experienced a hazardous malfunction of their braking systems and refuses to permit their dealers to inform consumers of the significant risk associated with the original parts on their vehicles.

53.    Toyota's acts and omissions have unnecessarily put the safety of Class members and the public in jeopardy. A fully operative braking system is a necessary prerequisite to safely operating the Class Vehicles.

54.    Further, because of Toyota's unfair, deceptive, and/or fraudulent business practices, owners, and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. Toyota undertook these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

55.    Had Plaintiffs known of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or they would have paid substantially less for the Class Vehicles.

56.    As a result of the Defect and the monetary costs associated with attempting to repair it, Plaintiffs and the other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct. Accordingly, Plaintiffs bring this action to redress Toyota's violations of the consumer protection statutes of Arkansas,

Florida, and Illinois. and also seek recovery for Toyota's breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and fraudulent concealment.

### V.    CLASS ACTION ALLEGATIONS

57.    Plaintiffs bring this action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and/or (b)(3), on behalf of the following Classes for the maximum time period allowable by law:

> **Nationwide Class:** All persons or entities who purchased or leased a Class Vehicle, as defined above.
>
> **Arkansas Class:** All persons or entities in Arkansas who purchased or leased a Class Vehicle, as defined above.
>
> **Florida Class:** All persons or entities in Florida who purchased or leased a Class Vehicle, as defined above.
>
> **Illinois Class**: All persons or entities in Illinois who purchased or leased a Class Vehicle, as defined above.

The Nationwide Class, the Arkansas Class, the Florida Class, and the Illinois Class are referred to collectively as the "Classes."

58.    Plaintiffs reserve the right to revise the definition of the Classes based upon subsequently-discovered information and reserve the right to establish sub-classes where appropriate.

59.    The Classes exclude Defendants and any entity in which Defendants have a controlling interest, as well as their officers, directors, legal representatives, successors, and assigns. The Classes also exclude government entities and judicial officers that have any role in adjudicating this matter.

60.     The Classes are each so numerous that joinder of all members is impracticable. Plaintiffs believe that there are far in excess of 100 class members in Arkansas, Florida, and Illinois and more than 1,000,000 proposed members of the Classes throughout the United States.

61.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

62.     Plaintiffs' claims are typical of the claims of the Classes Plaintiffs seek to represent.

63.     As alleged herein, Plaintiffs and Class members sustained damages arising out of the same actions and conduct of Defendants.

64.     Common questions of law and fact exist to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

- Whether Toyota sold the Class Vehicles with the Defect;

- Whether Toyota had knowledge of the Defect prior to selling the Class Vehicles and the consequences of the failure to disclose to its customers;

- Whether Toyota's misrepresentations and/or omissions were material to a reasonable consumer;

- Whether Toyota was required to disclose the Defect to consumers;

- Whether Toyota breached its express warranties regarding the safety and quality of the Class Vehicles;

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted;

- The amount and nature of the relief warranted.

65.     Plaintiffs are willing and prepared to serve the Classes in a representative capacity

with all the obligations and material duties necessary. Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have no interests adverse to or in conflict with the interests of any of the other members of the Classes.

66.     Plaintiffs' interests are co-extensive with and not antagonistic to those of absent members within the Classes. Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

67.     Plaintiffs have engaged the services of the undersigned counsel. Counsel are experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

68.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69.     The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

70.     The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

71.     The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes, or, if such notice is not practicable, by the best notice practicable under the circumstances including, amongst other things, email, publication in major newspapers, and the internet.

## VI.    CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, et seq.)
### (On behalf of all Classes)

72.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

73.    This claim is brought on behalf of Plaintiffs and all Classes.

74.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

75.    Toyota is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

76.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

77.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

78.    Toyota's new vehicle warranties and representations as to the quality of the Class Vehicles are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A), (B).

79.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

80.    Toyota breached these warranties, as described in more detail above.  Without limitation, the Class Vehicles are equipped with defective braking systems that are failing and put vehicle occupants' safety in jeopardy as well as the general public.  The Class Vehicles share a common defect in that the braking systems are manufactured with defective materials and/or with poor workmanship.  The Class Vehicles' braking systems have an unreasonable risk of failure and

are not fit for the ordinary purpose for which the vehicles are being used.

81.    Plaintiffs and Class members relied on the existence and length of the express warranties when deciding whether to purchase or lease their vehicle.

82.    Toyota has had a reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs are not required to provide Toyota with adequate notice because Toyota has long been aware of the Defect from complaints and service requests from Class members and has made clear from its actions that it has no intention of remedying the Defect.

83.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

## COUNT TWO
## BREACH OF EXPRESS WARRANTY
### (On behalf of all Classes)

84.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

85.    Plaintiffs bring this count on behalf of all Classes.

86.    Toyota's express warranties formed the basis of the bargain that was reached when Plaintiffs and other members of the Classes purchased or leased their Class Vehicles.

87.    Toyota breached these warranties by selling and leasing Class Vehicles with the Defect, requiring replacement or repair within the warranty period, and refusing to honor or repair the Class Vehicles when presented for replacement or repair during the warranty period.

88.    Toyota was provided notice of the defect in the Class Vehicles' brake systems by Class Member complaints made to their authorized dealers nationwide, complaints to NHTSA, and through Toyota's own testing.  Accordingly, affording Defendants a further reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because

Defendant has known of and concealed and denied the existence of the defect in the brake system and has failed to provide a suitable repair or replacement free of charge within a reasonable time.

89.    The time limits contained in Toyota's warranty period are also unconscionable and inadequate to protect Plaintiffs and Class members.  Among other things, Plaintiffs and Class Members have no meaningful choice in determining these time limitations, which favor Toyota, due to the gross disparity in bargaining power between Toyota and Class Members.  Moreover, Toyota knew of the defect when it sold the Class Vehicles and that the brake system would fail within the useful life of the Class Vehicles.

90.    Accordingly, recovery by Plaintiff and the other cCass members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

91.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and all members of the Classes have been damaged in an amount to be determined at trial.

**COUNT THREE**
**BREACH OF IMPLIED WARRANTY**
**(On behalf of all Classes)**

92.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

93.    Toyota was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Toyota knew or had reason to know of the specific use for which the Class Vehicles were purchased.

94.    Toyota impliedly warranted that the Class Vehicles were merchantable and fit for the ordinary purposes for which they were sold.  This implied warranty included, *inter alia*, that the brake systems in the Class Vehicles were safe and reliable for the purpose for which they were installed and that the Class Vehicles were fit for their intended use.

95.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing the Class members with reliable, safe, and durable transportation.

96.    Instead, the Class Vehicles suffer from a defective design and/or manufacturing defects.

**COUNT FOUR**
**VIOLATIONS OF FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT**
**(Fla. Stat. § 501.201, et seq.)**
**(On Behalf of the Florida Class)**

97.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

98.    Plaintiff Yvette Winia and Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

99.    Toyota engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

100.    The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).

101.    Defendants knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to the Plaintiff. Defendant actively suppressed the fact that the brake systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

102.    Further, Defendants employed unfair and deceptive trade practices to deny repair or replacement of the Defect under warranty and within a reasonable time in violation of the

FUDTPA. Defendants also breached their warranties as alleged herein in violation of the FUDTPA.

103. Defendants' unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiff and members of the Florida Class had no reasonable way to know that Class Vehicles contained braking systems that were defective in materials, workmanship, and/or manufacture and posed a safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defect and associated safety risks, and any reasonable consumer would have relied on Defendants, misrepresentations and omissions as Plaintiff and members of the Florida Class did.

104. Defendants intentionally and knowingly misrepresented and omitted facts regarding defective braking systems and associated safety hazard with the intent to mislead Plaintiff and Florida Class members. Defendants knew, or should have known, that the windshields are defective and expose drivers and the public to an associated safety hazard.

105. Defendants owed a duty to disclose the Defect and its corresponding safety hazard to the Plaintiff and Florida Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defect.

106. Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defect were intended to mislead consumers and misled Plaintiff and Florida Class members.

107. As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiff Winia and members of the Florida Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective braking systems; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defect.

108.    Plaintiff and members of the Florida Class seek actual damages against Defendants in an amount to be determined at trial and statutory, treble, and/or punitive damages under the FUDTPA.  Plaintiff and members of the Florida Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the FUDTPA.

**COUNT FIVE**
**VIOLATION OF THE ILLINOIS**
**CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**
**(On Behalf of the Illinois Class)**

109.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

110.    In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, *et seq*., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

111.    Plaintiffs Riveras and the Illinois Class members were injured by Defendants' deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiffs and the Illinois Class.  Because Plaintiffs Riveras and class members relied on Defendants' misrepresentations, concealments and omissions when purchasing and/or leasing Defendants' Class Vehicles, they were injured at the time of purchase and/or lease.

112.    Defendants do business in Illinois, sell and distribute vehicles in Illinois, and

engaged in deceptive acts and practices in connection with the sale and lease of the Class Vehicles in Illinois and elsewhere in the United States.

113.    Defendants knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs Riveras. Defendant actively suppressed the fact that the brake systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

114.    Defendants' unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiffs Riveras and members of the Illinois Class had no reasonable way to know that Class Vehicles contained braking systems that were defective in materials, workmanship, and/or manufacture and posed a safety risk.  Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defect and associated safety risks, and any reasonable consumer would have relied on Defendants, misrepresentations and omissions as Plaintiffs Riveras and members of the Illinois Class did.

115.    Defendants owed a duty to disclose the Defect and its corresponding safety hazard to Plaintiffs Riveras and Illinois Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defect.

116.    Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defect were intended to mislead consumers and misled Plaintiffs Riveras and Illinois Class members.

117.    As a direct and proximate result of Defendant's violations, Plaintiffs Riveras and members of the Illinois Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective braking systems; (2) the difference in value between the Class Vehicles promised and warranted, and the

Class Vehicles containing the Defect.

118.    Plaintiffs Riveras and members of the Illinois Class seek actual damages against Defendants in an amount to be determined at trial and statutory, treble, and/or punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act.  Plaintiffs Riveras and members of the Illinois Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the Illinois Consumer Fraud and Deceptive Business Practices Act.

**COUNT SIX**
**VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**(Ark. Code. Ann. §§4-88-01, *et seq.*)**
**(Arkansas Class)**

119.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

120.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§4-88-101, *et seq.*, prohibits deceptive and unconscionable trade practices in business, commerce, or trade.  Ark. Code Ann. §4-88-107(a).

121.    Plaintiff Khan and the Arkansas Class are a "person" within the meaning of Ark. Code Ann. §4-88-102(5).

122.    Toyota's products and services are "goods" and "services" as defined by Ark. Code Ann. §§4-88-102(4) and (7).

123.    Defendants do business in Arkansas, sell and distribute vehicles in Arkansas, and engaged in deceptive acts and practices in connection with the sale and/or lease of the Class Vehicles in Arkansas and elsewhere in the United States.

124.    Defendants knowingly failed to disclose, concealed, suppressed and/or omitted

material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to the Plaintiff Khan. Defendant actively suppressed the fact that the brake systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

125.    Defendants' unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Khan and members of the Arkansas Class had no reasonable way to know that Class Vehicles contained braking systems that were defective in materials, workmanship, and/or manufacture and posed a safety risk.  Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defect and associated safety risks, and any reasonable consumer would have relied on Defendants, misrepresentations and omissions as Plaintiff Khan and members of the Arkansas Class did.

126.    Defendants owed a duty to disclose the Defect and its corresponding safety hazard to the Plaintiff Khan and Arkansas Class members because Defendant possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defect.

127.    Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Defect were intended to mislead consumers and misled Plaintiff Khan and Arkansas Class members.

128.    As a direct and proximate result of Defendant's violations, Plaintiff Khan and members of the Arkansas Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective braking systems; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defect.

129.    Toyota's conduct is not only deceptive, but also unconscionable within the meaning of ADTPA because it constitutes immoral, unethical, oppressive, and unscrupulous activity,

caused substantial injury to consumers and businesses, and provided no benefit to consumers or competition.

130.    Toyota intended to mislead Plaintiff Khan and Arkansas Class members and induce them to rely on its misrepresentations.

131.    Plaintiff Khan and the Arkansas Class suffered, and will continue to suffer, actual financial loss as a result of Toyota's unconscionable and deceptive acts and practices.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

    a.  Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal rules of Civil Procedure, and issue an order certifying the Classes as defined above;

    b.  appoint Plaintiffs as the representatives of the Classes and their counsel as Class Counsel;

    c.  award all actual, general, specific, incidental, statutory, punitive and consequential damages and restitution to which Plaintiffs and members of the Class are entitled;

    d.  award pre-judgment and post-judgment interest on any monetary relief;

    e.  grant appropriate injunctive and/or declaratory relief, including, but not limited to, an order requiring Toyota to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time or, at a minimum, to provide Plaintiffs and Class Members with an appropriate curative notice regarding the existence and cause of the Defect;

    f.  award reasonable attorneys' fees and costs; and

    g.   grant such further relief that this Court deems necessary and/or appropriate.


**TRIAL BY JURY DEMANDED ON ALL COUNTS**


Dated:  March 23, 2020             Respectfully submitted,

                             By:   */s/ Bruce W. Steckler*
                                 Bruce W. Steckler
                               L. Kirstine Rogers
                               **STECKLER GRESHAM COCHRAN PLLC**
                               12720 Hillcrest Road, Suite 1045
                               Dallas, Texas 75230
                               Telephone: (972) 387-4040
                               Facsimile: (972) 387-4041
                               bruce@stecklerlaw.com
                               krogers@sgc.law

                               Edwin J. Kilpela, Jr.
                               **CARLSON LYNCH LLP**
                               1133 Penn Avenue, 5th Floor
                               Pittsburgh, PA 15222
                               Telephone: (412) 322-9243
                               Facsimile: (412) 231-0246
                               ekilpela@carlsonlynch.com

                               Jonathan M. Jagher
                               Kimberly A. Justice
                               **FREED KANNER LONDON & MILLEN LLC**
                               923 Fayette Street
                               Conshohocken, PA 19428
                               Telephone: (610) 234-6487
                               Facsimile: (224) 632-4521
                               jjagher@fklmlaw.com
                               kjustice@fklmlaw.com

                               Peter A. Muhic
                               NJ ID No. 041051994
                               Peter H. LeVan Jr.
                               NJ ID No. 000431999
                               **LEVAN LAW GROUP LLC**
                               One Logan Square – 27th Floor
                               Philadelphia, PA 19103-6933

Telephone: (215) 561-1500
Facsimile: (215) 827-5390
pmuhic@levanlawgroup.com

Melissa R. Emert, Esq.
**STULL, STULL & BRODY**
6 East 45th Street-5th floor
New York, NY 10017
Telephone: (954) 341-5561
Facsimile:  (954) 341-5531
Email: memert@ssbny.com